be submitted this afternoon on oral argument. We call United States v. Assani. Ms. Townsend? Good afternoon, Your Honors. May it please the Court. Katie Townsend on behalf of Appellants, the Financial Times Global Investigations Review, and the Guardian. The District Court below made multiple manifest errors of law, both procedural and substantive, that denied and are continuing to deny members of the press and public their rights of access to sentencing proceedings and related judicial records under the First Amendment and common law. First, the District Court held a significant portion of Saman Assani's sentencing proceeding behind closed doors with no notice to the public and no opportunity for any member of the public to object. Second, and relatedly, it has maintained the transcript of the closed portion of that proceeding entirely under seal. Third, it has denied the public any degree of access to judicial records filed for use in Mr. Assani's sentencing, including the party's sentencing memoranda and sentencing letters, without applying a presumption in favor of openness and without considering current case-specific circumstances or the public's very powerful interest in access in this particular case. And fourth, it denied Appellants' motion to unseal those judicial records on the basis of secret arguments that Appellants had no notice of and no opportunity to respond to. Each of these errors warrants reversal, and I can turn to each of them in more detail in turn, but I think it's important at the outset to note that all of these errors combined add up to a truly extraordinary curtailment of the public's right to understand the basis for a controversial sentence that was imposed in a high-profile prosecution of the defendant that was at the center of a massive global corruption scheme. Given that all of that has happened as you described it, assuming that's all correct, so what would you have us do now after the fact? Specifically, tell us in a sentence or two what we should do in your view. So I think my response to that would be probably threefold, Your Honor. So first, given the extent of sealing in this case, I think it's highly likely that there is what I would call some low-hanging fruit. Some judicial records that have been sealed by the district court that this court can very clearly determine should be unsealed immediately because there's no justification for their continued sealing. Second, to the extent there are portions of those records where there's a factual dispute where the record before this court, which I have not been privy to that full record, where it's not clear from that record whether or not there are portions of those materials that may be subject to redaction and this court is not comfortable making that initial determination itself, I think a limited remand as to those portions of the record for the district court to make that ruling within guidance to the district court as to the appropriate standards as well as the procedures to follow, I think that would be appropriate. I think those two things combined would take care of the records that were the subject of the February 23rd order as well and address the transcript of the closed proceeding as well, which is still sealed. Thirdly, Your Honor, I'd note that we do have a separate motion to unseal the party's briefs in this case that is pending before the court. Those materials, those briefs are obviously this court's records and so we would urge the court to scrutinize the redactions that have been made there and unseal this. It's to unseal the briefs but also to unseal the motions related to the unsealing, isn't it? It's both. That's correct, Your Honor. So with those three, I think those three things is the relief that we would urge this court to undertake. You're perhaps about to talk about this but what type of notice would you expect the court to give? You're talking about providing notice prior to sealing that the court is going to conduct a sentencing proceeding and portions of it are going to be considered confidential and subject to sealing for whatever reason. What would that notice look like? Well, I think this court's decision in Hearst Newspapers, I think, speaks to this. It indicates that district courts have some options when determining what notice is appropriate to give the public in advance of the closure of a sentencing proceeding, be that a portion of the proceeding or the entirety of that proceeding. So what we would have anticipated was, frankly, notice on the docket, a motion for closure. If there was a motion that the parties could respond to, but at least some form of opportunity for members of the press and the public, like my clients, to oppose that closure. None of that happened here. I think the only recourse we have with respect to that closed portion of Mr. Hassani's sentencing proceeding at this point in time is the unsealing of the transcript of that proceeding, which is still under seal. It's been nearly six months since Mr. Hassani is sentencing and I would note that in Hearst Newspapers itself, there was a transcript of the closed proceeding at issue unsealed within a quote, reasonable time, which in that case was within hours of the proceeding. So that would be the recourse we would be looking for specifically with respect to Mr. Saman Hassani's sentencing. Let me go back to the first question that my colleague asked you as to what you contemplate that our court itself, the judges will actually do. I can see where we can look at the procedural protections and direct the district court to follow this procedure, give these notices, etc. But with all of these closure problems, it's very difficult for us to be in a position to re-document this, one of the largest fraud schemes ever, widely known, and to make judgments that you would have confidentiality and the predictability of evidence, A, having consequences. What may be an innocence without context here may be deadly in reality. So that's the problem and I appreciate the press's interest, but at some point we have to give some trust to the person that's making the sealing orders and it's inherent in the phenomena. So procedural protection seems to be the access, is my point, and helping with that, what procedural protections do you want from this court? Well, I think it goes beyond the procedural protections, Your Honor, because I think if you look at... That's fine, but let's define what the procedural protections are and then say procedural plus, and then we'll talk about the plus. That'll help me. So I think the least access to some of the arguments that have been made in opposition to unsealing, the Mr. Asani and the government's joint opposition to our motion, the appellant's motion to unseal, remains under seal in the district court. We had no notice of that. We had no opportunity to respond to even just the legal arguments. So setting aside maybe some of the factual details that may have been included there, we had no opportunity to respond to that in advance of its ruling. I think part... That's curable by procedural protections. District court, give us notice in advance, et cetera. Give us notice in advance, give us an opportunity to respond. And I think critically important, though it's procedural, it sort of dovetails with the substantive problems, I think, with the sealing, is the level of detail or lack thereof in the district court's February 23rd order denying appellant's motion to unseal, which we've appealed here. The district court does not refer to the presumption in favor of public access, does not appear to apply that presumption. To the contrary, as we note in our briefing, the district court appears to apply a presumption of secrecy. It treats the motion to unseal as though it is a motion to reconsider Judge Gilmour's 2020 ruling that permitted certain redactions to mentions of the Assani's cooperation to previously file judicial records. And the district court declined to, quote, set aside that. The details of his cooperation. It's obvious that he's cooperating and that's widely known. You can just Google the thing and it'll tell you all about his cooperation, not the details of it, just the fact that there's some cooperation going. But it's the details of this that you're apparently pursuing. Well, Your Honor, I think I would respond to that in two ways. First, I think there are details of Mr. Assani's cooperation and his efforts to cooperate with U.S. authorities and to avoid prosecution in the U.K., details of that that are, in fact, quite public. I would direct the court to a November 12th, 2021 article that summarizes much of what at that point in time had become public after the 2020 ruling but had become public in U.K. court filings. That's in the Record on Appeals starting at page 665. It talks about the efforts of David Tinsley, who is a fixer who was working on behalf of the so that the Assanis could receive cooperation credit in the United States. It talks about what U.K. courts later deemed the very improper contacts between U.K.'s serious frauds office and Mr. Tinsley working on behalf of the Assanis, who, again, were attempting to ensure that they weren't prosecuted in the U.K. It included things like what the U.S. investigators, per Mr. Tinsley, on behalf of his clients, were saying they were interested in. It's the oil Nigeria and issues related to China. So it isn't just the fact, although the fact of his cooperation is most certainly public, it's not just the fact of his cooperation. And to be clear, nothing is public in connection with his sentencing. In other words, I'm not standing before you arguing about over-redaction to the documents in the district court. I'm standing before you arguing for any degree of access to those materials. The sentencing memoranda completely under seal. The sentencing letters completely under seal. A portion of the sentencing proceeding completely under seal. Presumably to protect information. How mechanically would we implement what you want? I think, again, Your Honor, I think a limited remand with, to the extent there are materials that it is clear should, and that would include things like legal argument that is reflected in any of these materials, that it is clear should be unsealed. This court has the power and I think should unseal those materials immediately, order them to be unsealed immediately. Alternatively, the court can remand to the district court to apply the presumption of public access, either the common law or First Amendment presumption, appropriately to these materials and evaluate whether and to what extent rejection is appropriate with some opportunity for the parties, specifically appellants, to counter some of at least legal argument that's being made by the parties below. One of the most reflexive reactions to a district judge is going to be to use a special master because that's what we do with questions of privilege, et cetera, attorney-client privilege and so forth. In other words, someone who has the sophistication and awareness of the tender places is going to have to look at these things. I don't think that's any of the three people sitting here as bright and able as we are. No, I think you're going to have to. That's my concern. I focus on getting at this and the mechanics of it because that's what this is about, procedural protections are a plus. When I get the procedural protections, I still don't have the plus. Well, I think, Your Honor, guidance to the district court as to what standards to apply to the specific categories of records at issue here would be valuable if this court is going to remand to the district court to evaluate to what extent this material should be made public. By guidance, I mean to apply the presumption in favor of public access, to apply what we argue in our brief. How do we derive that guidance? Obviously, the First Amendment is there. We know what the difficulty for us to know what is sensitive and what isn't without the context of the far-flung, to say the least, enterprise. The mechanics here are awfully important. That's what this is really about. And I think I would respond to that sort of in a two-step process, Your Honor. I think to the extent this court remands to the district court, I think the February 23rd order, again, doesn't give any indication that the district court applied the correct legal standards and so I think clarification from this court as to what those legal standards are and this court doesn't need to reinvent the wheel. It has first newspapers and the First Amendment right of access to sentencing proceedings, which we argue would extend or should extend naturally to the sentencing memoranda and related documents filed for use in that sentencing. That level of clarity to the district court and inviting the to narrowly tailor, meaning take into account the need for narrow tailoring and the potential for redaction to these records with, quite frankly, the district court gave short shrift to in the February 23rd ruling. I think all of that is necessary because it's clear whether or not this court looks at this from a de novo review perspective or an abuse of discretion perspective. Under the common law, this court's case law makes clear in Benhole, SEC against Van Weyenberg, June Medical Services. All of those cases make clear that the district court can't simply write an order that says everything is remaining under seal, which is effectively what's happening. In your view, would this require a line-by-line review of the underlying documents as well as a transcript? I think, Your Honor, even under the common law presumption of access, Benhole suggests that indeed that is what is required, a case-by-case, document-by-document, line-by-line review to determine what should be appropriately redacted and what should not be redacted. So it is difficult for me standing here not even knowing, frankly, even the volume of material, the page count of material that's under seal. We can sort of guess based on the record on appeal. It doesn't appear to us to seem voluminous. At the same time, I think that the district court has the obligation to ensure not only that only material that is sealed because it needs to be sealed to serve a compelling, countervailing interest is sealed, but also that sealing doesn't go beyond what is necessary. And that requires a careful review by the district court, certainly with briefing and briefing from the parties to help facilitate that. The denial was without prejudice, is that correct? It was without prejudice, Your Honor. But I don't think that's a solution or solves the problem from our perspective, given that it appears, again, that the district court did not apply the presumption of access to begin with. And I'd also say I don't think it's much of a solution from the perspective of the members of the press and the public to simply say, go away and come back at some undefined point in time. I see that I'm out of time. Yes, you've saved time for rebuttal. Thank you. Thank you. Misler? Yes, Your Honor. Good afternoon, Your Honor. Scott Misler on behalf of the United States. I think Ms. Townsend's argument and her reply brief helpfully divide the issues into procedural and substantive components. I understand Mr. Coggins on behalf of the defendants is going to focus on the substantive part. I'll just, if I can, briefly address that before turning to the procedural issues that are Ms. Townsend is certainly correct that this court's precedents require district judges to show their work in the right of access context in ways that they don't have to in other contexts. Nevertheless— It didn't show much of the work on the February 23rd, or did it? Well, I think the court's order was brief, but I think what the court was trying to do, Your Honor, was address the media's main claims in a public order. This court's precedents would have allowed the district court to file yet another order under seal and make sealed findings. The court obviously opted to take the public route. What I don't think this court's precedent established, Your Honor, is that this court has to give the district court's order the most uncharitable reading possible. I think that's what the media has done here. They've assumed that the court applied a presumption against access. They've, I think, also assumed that the court wasn't aware of the fact that Mr. Hassani had acknowledged his status as a cooperator at a sentencing hearing the district court presided over just weeks earlier. So I think, again, if the court's order is read against the backdrop of usual deference given to district courts in these matters, I think the order is defensible. And, again, I'll leave Mr. Coggins to dig into the details of that. But I'll just say that if you agree with our reading of the order and think that it was applying the correct substantive standards, then the main issue becomes whether the court abused its discretion in deciding that redaction, released with redactions, wasn't practicable here. On that point, Ms. Townsend, I think, says today that the court gave short shrift to the media's arguments and to the possibility of redaction. But I think, again, her reply reads stronger and says the court just didn't consider that. I think that's just not a fair reading of the court's order. The court specifically said in the last line, and Your Honors have the order, this court has considered the partial remedy of redaction, but finds that appropriate redactions in this instance would essentially destroy any value the documents have and, therefore, would undermine the very purpose behind the media intervener's request. And maybe the court was wrong there. That's a fair argument that Ms. Townsend has made. But I don't think you can say from that line there that the court's order didn't consider that or that it applied the incorrect legal standard, because that language there, although without citation, tracks the very cases from the Second Circuit, the Ninth Circuit, that we cite in our brief. The 250 pages were unsealed by the judge. Did I understand that correctly in the record? The 250 pages, not considering the sentencing materials, Your Honor, at an earlier stage the court had unsealed materials. Correct. That is correct. So turning to— Was it sealed based upon a request by the government or by the defendant or both? I mean, I take it the judge himself didn't say, gee, this sounds really sensitive. I think I'm going to— Right. So the government in this case, and I think we've walked through the procedural history in detail in our brief, the government moved to delay docketing and to seal numerous matters at the plea stage. And then when the media moved to intervene in the summer of 2020, the government did not oppose that and agreed to unsealing certain materials with appropriate redactions, most of which were focused, again, on cooperation. And that's really the thing I want to leave the Court with today. If nothing else comes out of this hearing, just to convey that we view the key point of this case to us as the way that courts treat cooperation information. We've cited the Court's numerous local rules to the Advisory Committee notes, to Federal Rule of Criminal Procedure 49.1, to studies the Judicial Conference has made. How to handle cooperator documents in an age of electronic filing is a really hard issue that very smart people, judges and scholars, are studying. So we would urge the Court to do whatever it does with this case, is not to write an opinion that puts district courts in a constitutional or common-law straitjacket that deprives them of the ability to redact, to seal, as need be, this category of very sensitive cases. And again, this case, as it comes to the Court, is in a bit of a strange posture because some of the equities have changed throughout the case, and it's fair for Ms. Townsend to point that out. But again, I think it's fair for us to point out that we had an experienced district court who was presiding over these proceedings and I think was plainly aware of some of the changes that had taken place. So aware that while the Court had taken extraordinary measures to protect the facts of Mr. Assani's cooperation from coming out, the focus shifted later on, as Your Honor mentioned earlier, Judge Higginbotham, to protecting the details of cooperation. And I don't think when we talk about details of cooperation, we're talking about the kind of back-and-forth that Ms. Townsend summarized today. We're talking about the nature and scope of the cooperation, and that's something that I think every court to look at has recognized as a compelling interest that can support sealing in certain instances. So on the procedural challenges, we have what I'll call a partial closure of the sentencing hearing. And again, I think that distinguishes this case from the Hearst Newspaper's precedent from this Court. That involved a complete closure of the hearing in which the Court accepted a guilty plea and took the sentence and imposed sentence. Here, while Ms. Townsend says that everything's under seal, the media and the public were present at the public portion of Mr. Assani's sentencing. But as to the non-public portion, not only was it non-public, but there was no public posting of the fact that it was taking place, nor were the briefs or the motions involved in that disclosed. Surely, that was not appropriate. Well, I think Your Honor, Hearst Newspaper's in footnote 15 left open the question of whether there could be circumstances in which no notice could be given in advance. And I think Department of Justice guidelines we've cited in our brief likewise say notice is absolutely the norm, may be constitutionally required in certain situations. But we don't think notice is required when giving notice would defeat the very interest that supported closure. First Amendment, I give you notice that we're going to hold this hearing, but you can't be here. How does that advance the, okay, you go to, I guess it gives you an opportunity to challenge the fact of full closure, but nothing beyond that. I take your point, Your Honor. I think, you know, on a clean slate, we might have different arguments, but I think Hearst Newspaper settles the general question in Ms. Townsend's favor that there is, as Judge Smith pointed out, generally a right to notice. But I think Hearst Newspaper's in the footnote there and the Second Circuit precedent it relied on have repeatedly reserved this question. I don't think they would have reserved it if, as Ms. Townsend argued in reply, the Supreme Court's Globe Newspaper's decision had announced what is in fact a bright line rule that says you can never deprive the media and the public of notice. So I think I would also give the example of this Court's decision in United States v. Edwards, which involved mid-trial bench conferences and closed proceedings to address juror misconduct. I think courts have generally recognized that when you're talking about in-camera conferences or bench conferences that pop up suddenly, you don't have to give notice and an opportunity to object at that point. The Eleventh Circuit's Valenti decision involves some similar proceedings in the pre-trial context. You can't always have, I think, an opportunity to object beforehand. Ms. Townsend's right that when you don't have the opportunity, when there's no chance to do that, courts will often say that the release of the transcript is a substitute for that. But again, here, Your Honor, I think we have a situation where the district court found, and the court has the transcript before it, starting at ROA page 2800, that this was an in-chambers hearing specifically to address the details of cooperation. So you're going to have cooperation-related information that's non-public intertwined with perhaps lines here and there that could be public. And so the question for the judge is going to be, I think, if the Court remands or under further proceedings, whether that transcript can consensibly be released or whether the redactions would be so pervasive that they would defeat the purpose of release. Address also the fact that once the intervenors filed a motion to unseal documents, this is separate from the sentencing proceedings, that was docketed as a, quote, sealed event. And for that reason, these intervenors didn't even know the response was sealed. So they didn't even know that a response had been filed to their motion. How does that comport with any concept of due process in a federal district court? I don't think that procedure was ideal, and we said that in our brief, Your Honor. But I think in the kind of unique circumstances of this case, I also don't think it deprived the media of due process, because as it happens, they had discerned from prior arguments and they had briefed that to the Court. So I agree it would have perhaps enhanced adversarial presentation, but I don't think it ultimately was outcome determinative here, and I think they were still able to make their core point to the district court, which concerned essentially whether Mr. Osani's cooperation was public. We don't agree for the reasons set forth in our briefs that it was public in the way that courts usually refer to publication and acknowledgment at the time of the closed sentencing hearing, but it certainly was public by the time that Judge Heenan issued his order. Plainly serve a very valuable role here, because if nothing else, when you give notice that we're going to close the court and you're not going to be able to be here, it sends a direct signal to the court, a reminder to the court, of what he's about. If you don't have procedural protections, then it creates an atmosphere in which the court can move too fast and too rapidly and not be sufficiently attended. So beyond that, the procedural protections really don't . . . that's enough and they're required, but beyond that, it really doesn't answer the questions of how and the particular decisions are made. There comes an element of trust at some point. Can I answer Judge Jiggabatham's question now? Yes, thank you. I guess I would make just a couple of points. One is I don't disagree with Your Honor. I think notice is helpful. It's salutary. The government didn't dispute that point in Hearst Newspapers. We don't dispute it here. The question ends up being whether this is an exceptional case, an extraordinary case, and again, whether you have an instance where notice would itself defeat the very interests that are being served or asserted by closure. If the idea is we don't want to judge this gentleman as a cooperator and we put something on the docket that's going to clearly indicate to any astute observer that this is about cooperation, that defeats the whole purpose of the partially closed sentencing. So that's the first point. The second point is in terms of what kind of notice would suffice there. Ms. Townsend suggests some things on pages 24 and 25 of her reply, and again, I don't think they would serve too much purpose for Your Honor's comment because one of them was just, well, just delay it until right before the sentencing hearing. But if that's what's happening, then it's a problem in the sentencing because the judge has to adjudicate that matter, and most of the Supreme Court precedents here, I think, have taken care to say that we don't anticipate or require that these notice proceedings or the First Amendment right of access will actually delay the trial or sentencing proceedings. Thank you very much. Mr. Coggins. Thank you, Your Honors, and I'm here with Jennifer McCoy on behalf of Mr. Assigning, and good to see you all again. I'd like to start by saying I think the media has set up a straw order here that does not exist, in fact, and is not the order that we're dealing with. The media said the judge didn't appropriately consider the First Amendment issues, that the government simply blindly followed Judge Gilmour's earlier order, that it began with the documents, document by document, and that it did not adequately consider redaction. I think that reading flies in the face of the express language of the order before Your Honors in which the judge said he gives great respect to the First Amendment, both he and Judge Gilmour have great respect for the First Amendment. There's no mention of a presumption of secrecy. There is an explicit statement that he reviewed each of the documents. There is also an explicit statement that he considered redaction in this case, and he named the compelling interest that overcome and that the case law has overcome. The media has not been able to cite you one example of a case that says safety of a defendant and his family is not a compelling interest that can overcome the presumption of free access. They have not cited you one case that said privacy interest of the defendant and his family cannot overcome that presumption. And most tellingly, and I think this is to Judge Higginbottom's point, while they pointed out that the word cooperation has been used from time to time, I would argue barely and rarely, they did not point out in nearly 100 pages of briefs one detail of that cooperation, one step of that cooperation, and cooperation in this context as a bare word, can mean many things. Cooperation by a defendant like Mr. Hassani can be leaving a country where he can't be expedited to come to the United States. Cooperation can be getting on a plane, unguarded, at your own dime, and flying to the United States to plead guilty, then flying back on your passport, then coming back to be sentenced, then flying back and then coming back. So cooperation, the difference is basically this, Your Honor. It's like knowing that Judge Bessant has a recipe for oatmeal cookies and knowing what those ingredients are. The word cooperation doesn't mean anything without the details. And what the media is really after here is the details of any alleged cooperation. I mean, that's really what they're after, and they're not going to get it. And if the court adequately ... And I think Ms. Townsend's done a remarkably good job in trying to ferret this out. I just think that the compelling interest in this case on behalf of Mr. Hassani, and one of the things they point out, I guess I'd like to point out, is Your Honors had the benefit of what took place at the sentencing, both in chambers and in open court. And so the I think any fair reading of that transcript shows that what happened in chambers were the sensitive, non-public details that should have happened in chambers. And what happened in open court were those facts, the sentence, that could come out in open court. Now, I don't criticize the judge for the way he did it, either, because the alternative would have gone back in chambers, and then we could have gone back in open court. And I think you leave it ... There is an element of trust, that the district judge runs his docket, he runs his case. You trust him to know the law and to adequately apply the law as Judge Hannon did here. He knows the First Amendment law, and he adequately applied that law, and he knows what compelling interests do it. And he's also closest to the ground of the compelling interest here of ongoing investigations, of safety, of security, and of privacy that can overcome that. So we have a situation in which I think Judge Hannon had an extraordinary case and took the best possible route. And as I said, the proof ... I used recipe earlier. The proof is in the pudding. The proof is in what happened in those chambers. And any prior reading of that, it is not that long, will show that it's highly sensitive, non-public matters that have not appeared in the press. Most of the time here has been spent appropriately on the sentencing proceedings, but would you also speak to the pending motion to unseal? Yes, to unseal the briefs, Your Honor. Briefs. Well, Your Honor, we filed, as you know, redacted briefs and unredacted briefs with the court. So I think to the extent that there's argument on the law, you know, we were fine with unsealing that. But the sentencing memoranda itself should remain sealed because it's like what the judge made a review of the documents and made a considered opinion that what you're going to have if you release it is the comes now, these people, and the farewell at the end, and then most of it's going to be blacked out. I mean, it's going to be a useless document at the time it comes out. So to the extent that any document can be redacted, I think the judge has taken a look at that, and I think we've taken a look at that. I know the government made great efforts to only redact the portions that needed to be redacted. We did the same thing in our briefs. So just like Judge Hannon, I think, did what he should do as a judge in these circumstances. And I would like to point out one other thing, and that is the media made a good argument, and that is that circumstances change. They change over time. And Judge Gilmour faced a certain set of circumstances a couple of years ago. Judge Hannon faced different circumstances. And the media has argued that the needs of sealing, the need for the privacy, the compelling interest might fade over time. That is true, but you know what? It might strengthen over time as well. And I think, Your Honors, we pointed to certain matters. I can't mention in open court, but certainly give you a sense of where they are that say the matters that require non-publication of some of these details is stronger now than it was before Judge Gilmour. And Judge Hannon himself made the statement that we'll reassess this down the line if it's requested, because the circumstances do change. But right now, he made a finding based upon the record before him at that time, and I think his finding was more than justifiable. And you know, I don't want to repeat anything that my learned counsel from the government said, but just in terms of giving you just, if I could point out just a few areas that the court, you know, pages 6 and 7 of our brief, we tried, that's a hugely important issue, page 31 of the government's brief and page 17 of our brief. That's redacted, sensitive, non-public information that shows that the need for doing what Judge Hannon did is actually stronger now than it was when Judge Gilmour entered her order. And we haven't talked too much about it, but in terms of things like the sentencing memorandum, it does contain some sensitive fiscal and mental health issues of Mr. Hassani's family, his ex-wife, his minor children. That's the kind of information that typically does get mentioned. But much of what was done here was followed pursuant to the local rules set up in the Southern District of Texas. So your honors are dealing with issues that are routinely have handled this way in the Southern District of Texas, number one, and then I noticed my light is about to come on. I want to add one other thing before your honors, and that is stepping back in my old hat as a former U.S. attorney, you're dealing not just with individuals now who may or may not be cooperating with the government, but what the court does here and what the court does, what Judge Hannon does, has an effect on cooperation in the future, quite frankly. And that's why I think your honors are obviously careful about what you're going to do. But with that, I'm happy to answer any more questions. All right. Thank you, Mr. Clark. Thank you. Mr. Townsend, you saved some time for rebuttal. Thank you, your honors. I'll just address a few issues quickly. Invoking general interests like defendant safety or the safety of defendant's family or the integrity of ongoing investigations that might support sealing in some other case involving a cooperator, a truly confidential informant, I think is clearly insufficient here because Mr. Assani's cooperation is known, as in cases like Washington Post against Robinson and the other district court cases that we've cited that are on point in our briefing. When the cooperation is a known factor, the party advocating for closure needs to demonstrate that there's some additional risk. For example, someone who would be inclined to harm Mr. Assani because of his cooperation if his sentencing memoranda is unsealed but wouldn't now because merely the fact of his cooperation is public. There's a lot of detail beyond the fact of cooperation. And I think there are details beyond the fact of Mr. Assani's cooperation, as I indicated to the court earlier, that are public. There may be specific pieces of information, and we've allowed for this, specific pieces of information that should be redacted that the government or Mr. Assani can demonstrate a need for redaction. But I think what this court's precedent makes clear is that it doesn't put, as Mr. Maisel suggested, district courts in a straitjacket to require them to comport with the First Amendment and common law strictures of considering case-specific circumstances and narrowly tailoring sealing decisions to the particular records at issue. That's what this court's precedent has required time and time again. That doesn't put district courts in a straitjacket. It simply requires them to follow the law. And I think that what, again, we would urge this court to do is, to the extent it's going to remand to the district court, to ask the district court to consider redaction utilizing the appropriate standards. And I would note, with respect to Mr. Coggins, that the district court's February 23rd order says precisely what it says. I don't think you can read beyond that or make assumptions about what the district court may have been thinking. It's evident the district court says expressly that Judge Gilmour addressed these issues regarding the release of information years ago, and this court finds no good reason to set aside Judge Gilmour's order. And the only specific documents that the February 23rd order address are the sentencing memoranda. So, again, we would, if there are no further questions, Your Honor, appellants would urge this court to reverse. All right, thank you, Ms. Townsend. Your case is under submission, and the court is in recess.